LOLLEY, J.
| ,This criminal appeal arises from the 26th Judicial District Court, Parish of Bossier, State of Louisiana. The defendant, Victor Everatt Stewart, pled guilty to two counts of attempted forcible rape, violations of La. R.S. 14:27 and 14:42.1. He was subsequently sentenced to 20 years at hard labor on each count, with the sentences to be served consecutively. Stewart now appeals, and for the following reasons, we affirm his convictions and sentences.
Facts
Stewart was charged by bill of information with two counts of aggravated rape. Specifically, the bill charged that between June 1 and July 31, 2010, Stewart committed aggravated rape upon S.L., a nine-year old, and C.H., a ten-year old, in violation of La. R.S. 14:42. Stewart initially pled not guilty as charged.
In October 2011, Stewart appeared before the trial court with his attorney from the Public Defender Office for Bossier Parish, at which time Stewart withdrew his original plea of not guilty on both counts and pled guilty to two counts of the amended charge of attempted forcible rape. During a thorough Boykin examination, Stewart was specifically asked whether anyone had made any promises to persuade him to plead guilty or whether anyone had coerced him into pleading guilty. Stewart answered both questions with an unqualified “no.” In reciting the facts, the State noted that at trial it would present evidence that during July 2010, Stewart attempted to forcibly rape S.L. and C.H. by using the threat of force to coerce the victims to have oral and/or anal sex with him. Asked whether [2that recitation of the facts was correct, Stewart answered in the affirmative. With that, Stewart’s guilty plea to both counts was accepted by the trial court.
*917 Shortly thereafter and before his sentencing, Stewart sent a letter to the trial court expressing his desire to withdraw his guilty plea. In the letter, Stewart stated that he had been manipulated into accepting the plea through the actions of his trial attorney, Michael Miller. The trial court treated the letter as a motion to withdraw a guilty plea, set the matter for contradictory hearing, and appointed new counsel to represent Stewart during that hearing. After the conclusion of the evidence, the trial court denied the motion to withdraw. It reviewed the procedure in taking Stewart’s plea and deemed Stewart’s response to the trial court during that process to be more credible than his testimony at the motion to withdraw. The trial court noted that nothing was observed of Stewart’s demeanor on the day of the plea which indicated that his plea was not knowing and voluntary. Finally, the trial court opined that Stewart had simply changed his mind.
Subsequently, Stewart came for sentencing. Prior to imposing sentence, the trial court reviewed the presentence investigation report (“PSI”) indicating that Stewart was 17 years old at the time of his offenses and 18 years old at the time of sentencing. After making other references to the PSI, the trial court sentenced Stewart to 20 years at hard labor on each count, to be served consecutively. No motion to reconsider sentence was filed by the defendant, and this appeal ensued.
| ¡¡Discussion

Sentencing

In his first assignment of error, Stewart maintains that the trial court erred by imposing excessive sentences for each of the counts and failed to give sufficient weight to the mitigating factors. The State argues that in light of the benefit received by Stewart as a result of his plea bargain, the sentence imposed is not excessive. We agree.
Louisiana C. Cr. P. art. 881.1 applies to Stewart’s sentence, and precludes a defendant from presenting sentencing arguments to the court of appeal that were not presented to the trial court. In such a circumstance, a defendant is simply relegated to having the appellate court consider the bare claim of constitutional exces-siveness. State v. Mims, 619 So.2d 1059 (La.1993); State v. Masters, 37,967 (La.App.2d Cir.12/17/03), 862 So.2d 1121. Constitutional review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense or shocking to the sense of justice. State v. Lobato, 603 So.2d 739 (La.1992); State v. Livingston, 39,390 (La.App.2d Cir.04/06/05), 899 So.2d 733.
A trial court has broad discretion to sentence within the statutory limits. Where a defendant has pled guilty to an offense which does not adequately describe his conduct or has received a significant reduction in potential exposure to confinement through a plea bargain, the trial court has great discretion in imposing even the maximum sentence possible for the pled offense. State v. Germany, 43,239 (La.App.2d Cir.04/30/08), 981 So.2d 792. Absent a showing of manifest abuse of that discretion we may not set aside a sentence as excessive. State v. Guzman, 1999-1528, 1999-1753 |4(La.05/16/00), 769 So.2d 1158; State v. June, 38,440 (La.App.2d Cir.05/12/04), 873 So.2d 939.
The sentencing range for forcible rape is “imprisonment at hard labor for not less than five nor more than forty years,” with at least two years to be served without benefits. La. R.S. 14:42.1(B). Since Stewart was convicted of attempted forcible rape, he was subject to receive one-half of the maximum sentence for forcible rape, or 20 years. See La. R.S. 14:27.
*918 In the instant case, the sentences imposed are neither grossly disproportionate to the severity of the offense, nor do they shock the sense of justice considering the crimes committed by Stewart. In fact, despite his plea to a lesser offense, Stewart’s actual conduct more accurately falls under the definition for the offense of aggravated rape which is punishable by mandatory life imprisonment. See La. R.S. 14:42(D). Additionally, by all accounts, Stewart inflicted permanent damage on his two young victims. In preparing the PSI, the investigator spoke to both of the victims’ mothers. In the PSI, S.L.’s mother indicated that her son had changed from a playful carefree child to an introverted, fearful child who isolates himself, and C.H.’s mother stated that her son attends monthly counseling sessions, but that he is adjusting well. The trial court also heard from S.L.’s mother and uncle during the sentencing hearing. They both testified how S.L. had been changed by these events.
The trial court considered Stewart’s PSI and any mitigating factors. It noted that: Stewart was one of four half-siblings born to the same mother by four different fathers; Stewart’s own father was absent; he reported being molested by an uncle at five years of age; Stewart had a 10th grade ^education; he was diagnosed as bipolar and ADHD. The PSI also showed that Stewart claimed to attend the Missionary Baptist Church every week until he was arrested. Additionally, the PSI reflected that Stewart had no adult criminal history, and although he had a juvenile record, no details were available.
Of notable consideration, the PSI described interviews by the Gingerbread House (a children’s advocacy center serving abused children) wherein the victims (9 and 10 years old at the time of the offense) had stated that Stewart “used his penis to sexually assault them orally and anally” and that his victims were forced to perform oral sex on him as well. The victims also stated Stewart had threatened them with physical harm if they did not do as told.
The fact that Stewart was young when he committed the offenses and was allegedly molested himself as a young boy is not sufficient in the way of mitigation to warrant a finding of unconstitutional ex-cessiveness. Stewart committed heinous crimes upon these two, very young boys whose lives may be forever affected. Stewart’s own young age is unfortunate, but he was certainly old enough to know better and deserves his punishment. The trial court’s sentence was in no way excessive, and, in fact, Stewart benefltted greatly from his plea deal. We conclude that this assignment is without merit.

\ (Motion to Withdraw Guilty Plea

Stewart brings two pro se assignments of error. First, he argues that the trial court erred and abused its discretion in denying his timely motion to withdraw guilty plea. Stewart maintains that the trial court erred in light of the evidence of coercion by his attorney, his mother and his sister to accept the State’s offer. Stewart argues that he repeatedly asserted his innocence, and his attorney’s testimony at the hearing was self-serving and should not have been deemed credible.
A trial court may permit the withdrawal of a guilty plea at any time before sentencing. La. C. Cr. P. art. 559(A). The discretion to allow withdrawal of a guilty plea under art. 559(A) lies with the trial court and such discretion cannot be disturbed unless an abuse or arbitrary exercise of that discretion is shown. State v. Calhoun, 1996-0786 (La.05/20/97), 694 So.2d 909; State v. Harris, 48,069 (La.App.2d Cir.03/19/08), 980 So.2d 174. A defendant has no absolute *919 right to withdraw a guilty plea. Id. Generally, the denial of withdrawal of a guilty plea will not be reversed on appeal when the record shows the defendant was informed of his rights and the consequences of the plea and that the plea was entered voluntarily. State v. Hams, supra at 178. When ruling on a motion to withdraw a guilty plea, the district court should look beyond the Boykinization and consider all relevant factors, such as the breach of a plea bargain, inducement, misleading advice of counsel, strength of the evidence of actual guilt, or the like. Id.; State v. Burnett, 33,789 (La.App.2d Cir.10/04/00), 768 So.2d 783, writ denied, 2000-3079 (La.11/02/01), 800 So.2d 864. A defendant’s |7change of heart, or misunderstandings with counsel, do not usually render a guilty plea involuntary. Id.
Initially, we observe that there is nothing to suggest that Stewart’s guilty plea was anything but voluntary. The transcript of the Boykin examination clearly indicates the trial court informed Stewart of his rights. The trial court also explained the terms of the plea agreement, and Stewart made clear his decision to plead guilty without having been forced, threatened, or coerced. Miller, Stewart’s counsel at the time, acknowledged that he informed Stewart of his rights prior to the hearing as well as the consequences of his guilty plea and that he was satisfied Stewart’s guilty plea was a voluntary act on his part. Thus, there is nothing in the record to indicate that Stewart’s guilty plea was invalid.
Furthermore, the trial court carefully considered the reasons for Stewart’s motion to withdraw his plea in addition to the actual plea proceeding. At the hearing on the motion to withdraw, Stewart and his sister, Jennifer Stewart, both testified to the events of the day on which the plea was entered. According to Stewart, he was in the courthouse holding cell because his case was set for trial. He described how Miller came to the cell and communicated the State’s offer to allow him to plead to attempted forcible rape with a sentencing exposure of 0 to 20 years. Stewart testified that he declined the offer and insisted on going to trial. As related by Stewart, Miller advised him that if he went to trial he faced the possibility of two life sentences, a risk Stewart indicated he was willing to take. Miller then told Stewart’s mother and sister that he had refused the State’s offer. According to Stewart, Miller had Stewart’s sister write him a note to 18encourage him to take the plea, a note Miller delivered to the holding cell. In the note, his sister allegedly told Stewart that he would only receive probation; however, Stewart continued to refuse the deal. Stewart testified that Miller then sent his crying mother and sister to visit him in an effort to persuade him to take the deal. It was under this pressure that Stewart alleges to have succumbed and decided to take the plea deal. Stewart also contended that throughout the discussions, Miller had represented to him that if he pled to attempted forcible rape he would only receive probation.
Jennifer Stewart also appeared at the hearing on the motion to withdraw, and she claimed that on the day of her brother’s trial, Miller had informed her and their mother that Stewart had turned down the State’s plea offer. The offer was for attempted forcible rape with the benefit of a PSI and Miller informed them if the investigation showed no prior criminal history, Stewart would “possibly, more than likely, get probation.” Jennifer testified that she wrote her brother a note and talked to him that day to try and encourage him to take the plea and that she was not forced to do so by Miller. She said Miller made no guarantees about proba *920 tion although he did make repeated mention of it.
Miller testified as well at the hearing. According to Miller, on the day in question he was ready to proceed to trial when the State tendered the offer of two counts of attempted forcible rape with the benefit of a PSI, but no further agreement as to sentencing. Miller recalled that he communicated this offer to Stewart in the courthouse holding cell and that the defendant initially rejected the offer. Stewart countered with an offer of misdemeanor carnal knowledge, which the State rejected. Miller testified [¡¡that Stewart’s mother and sister introduced themselves to him and asked whether Stewart was going to take the deal. When they learned he was not, Miller confirmed that Jennifer wrote a note to her brother and asked Miller to deliver it to him. Miller delivered the note to Stewart, but did not read it before delivering it. After reading the note, Stewart went back and forth on whether he would accept the State’s offer, but finally concluded he would not. When Miller informed Stewart’s mother and sister, they asked to speak to him. Miller initially told them they could not, but a nearby “jailer” indicated there was a visitation window for them to talk to Stewart. Miller said he did not participate in or witness the conversation. When Stewart decided to take the deal, Miller testified that he went over Stewart’s rights and instructed him that the trial court would ask him a series of questions to which he needed to respond, but denied that he instructed Stewart on how to respond.
In considering all the testimony on Stewart’s motion, the trial judge expressly found that Stewart’s testimony was not credible as to being misled by Miller and the coercion he felt from his attorney and family members. Since credibility determinations are within the purview of the trier of fact, it cannot be said that the trial court’s denial of the motion on this basis was an abuse of discretion. Notably, Stewart was explicitly asked at the guilty plea whether he had been advised by his attorney and whether he was satisfied with his representation. Stewart responded, “Yes, sir....” When also questioned whether his plea was voluntary, he again responded affirmatively. Here, it is evident that Stewart was fully informed of his rights and his plea was voluntary. His later testimony to the contrary was | ^obviously not believed by the trial court. After considering the guilty plea proceeding and other relevant factors before it, the trial court was within its discretion in determining that Stewart was not entitled to withdraw his plea. Thus, we conclude that this assignment of error is without merit.

Error Patent

In his second pro se assignment of error, Stewart requests a review of the record for error patent on the face of the record, something this court does on all appeals. A careful review of the record for error patent was conducted in accordance with the guidelines laid down in State v. Oli-veaux, 312 So.2d 337 (La.1975), and none were found.
Conclusion
For the foregoing reasons, the convictions and sentences of Victor Everatt Stewart are affirmed.
AFFIRMED.